May it please the Court. I'm Alisa Lipsky, Counsel for EIT Holdings. The first point I want to get across is even if the District Court's claim construction failed to be cited by the District Court would invalidate Claims 40 or 41. That's why we oppose the motion for summary judgment. So this isn't something that necessarily hinges only on claim construction, although we feel that there were some errors made in the claim construction. Specifically, as Your Honors may have noted, for many of the means of function terms that were construed by the Court, the Court found that Master Program was the corresponding structure, even though it's clear that Master Program in the specification is associated with more structure than just Master Program itself. In fact, in the figures and in the description, specific structure is associated with the Master Program. You're talking about now the Master Node component? I'm talking about the Master Program that's connected to the Master Node. So, for example, in Figure 1 in Box 140, the entirety of what's inside that... Now, is Master Program defined in the specification at all? Master Program is basically defined by the claim, but it's also defined in Claim 40. That's a pretty broad, vague term. What does it mean? I would look to the specification and what would I find? You would find that Column 3, Line 50, Master Program 140 is a large server preferably built on a Sybase SQL Server platform, and then there's a further description. Column 3, Line what? Line 50, Your Honors. That entire paragraph describes the Master Program. Again, looking at Figure 1, Box 140, everything contained within that box is also the Master Program. So, it's a large server? Yes, it's a large server preferably built on a Sybase SQL Server platform. It performs certain functions as described in Claim 40 and 41. But in Column 4, Lines 22 to 25, there is a description of how the Master Program performs the function of receiving and transmitting. Those are the functions that are described in the Means Plus Function clauses, correct? Yes, Your Honor. One of the problems that I have with this is that you have a very, very broad claim, two very, very broad claims. In a patent, that's really directed to the efficient use of broadband spectrum and you've got two very broad claims that are not really limited to that at all. And with the Means Plus Function recitation, the claim is one of two things. Either it is construed extremely broadly, which is the way the district court looked at it, or it can't be construed because there isn't a sufficient structure recited in the specification to link the Means Plus Function clause. So it seems to me you're on sort of the horns of a dilemma because on the one hand, if you want your Means Plus Function clauses limited to certain specific structural things, the specification seems to me to fall a little short of that mark, which raises the 112 problem. On the other hand, if you want the claim to survive 112, and the district court I think gave you the benefit of the doubt and found structure in this specification to support the Means Plus Function clause, well, that's very, very broad structure because the description is very broad. It's kind of a twist. Normally Means Plus Function clause is the narrowest thing, but here, because of the way this spec is written, you wind up with a fairly broad construction, which leaves you with a dilemma of wrestling with that prior art reference. I understand, Your Honor, and if Master Program was just described as a box, so if Box 140 just said Master Program and didn't encompass all of these things in the figure and there wasn't this description of the Master Program and the various elements within the Master Program and how they respond to both each other and the Master Node, the Master Database, I would agree with you, but I don't think that one of the skill in the arts reading this would have difficulty in understanding which part of the Master Program corresponds to the various Means Plus Function terms. Now, the prior art here is a patent that is a news clipping service and based on the requests and inputs, it customizes the news to the user. Why isn't that exactly what you're doing or very close? The 938 reference that was relied upon by the district court basically claims a proxy server and if you look at it as the district court did, our patent is reduced to a mere proxy server. However, what our patent describes is a Master Program that connects with a Master Node and a Master Database. So, the Master Program itself, although you all have argued the proxy server is... But you're getting to the same place is kind of what I'm saying. The whole point of your invention is to read my preferences and give me selections based on my earlier selections, right? That is the general idea. And isn't that exactly what the prior art is doing? I do not believe that the prior art is doing it in the way that it claims in Claim 40 and 41. I don't think the proxy server can be the Master Program. But that's where you get into the problem that my colleague described and that is that if you're relying on doing this very important function in a different way, don't you have to supply us more than just a black box that says Master Program? Well, and that's what the patentee did, Your Honor. And looking again at Figure 1, it's very clear that the Master Program is separate from the Master Node and the Master Database. So, in the 938, the proxy server, as the district court held, the proxy server is the Master Node, the Master Program, and the Master Database. And it's very clear from the claim that the Master Program, the Master Node, and the Master Database are different elements of the claim. So, in other words, Your Honor, if the Master Program is the proxy server, then the Master Node and the Master Database can't also be the proxy server. And yet the Master Node, the Master Program, the transmitting, the receiving, all of them are described in terms broad enough to be exactly what the prior art was doing, right? I would disagree with that, Your Honor. And we would clearly acknowledge that a single entity can do more than one function. So, if the prior art was doing two functions in one element, that would still anticipate you, right? I don't believe so, Your Honor, because the Master Node is not a function. The Master Node is not one of the means plus function terms within the Master Program. The Master Node is separate from the Master Program. And yet the Master Node is described as the structure that does the transmitting and receiving. It's described in functional terms. Well, Your Honor, the Master Node is described as preferably a server, if that's correct. Preferably a server, so it's something more than a server. However, the Master Program also includes a web server. So, while the Master Node is a server, the Master Program has a server itself that interacts with the server of the Master Node in the preferred embodiment. So, am I correct that your point is that even if a proxy server, the proxy server of the 938 reference can be said to be equivalent to or the same as the Master Program, that still doesn't answer the question of what about the User Node and the Master Node, where you've got data being transferred from one through to the other? That's right, Your Honor. And there's also the issue of reference. Although it's been construed as something that refers to something else by the district court, we believe that in the 938, the list of articles that it's referred to is the target information itself and not the reference. It's very clear from the specification that the reference is not the target information. The User Node requests the target information. Does the patent support a limiting definition on reference? I believe so, Your Honor. How? As supported, well, certainly the specification talks about a reference being transferred to the User Node and only then can the User Node request target information. But the specification also talks about icons, which can describe, be clicked on to lead to the target information. So a reference is really something that's behind the scenes, whereas the target information is what the user actually sees. Ms. Lipsky, is there anything in the district court summary judgment order other than the paragraph capital C on page K14? I'll give you a minute to get to that. A14? Okay. Is there anything other than that paragraph that talks about this point that you are making about the absence in the 938 patent of anything that talks about the difference between the Master Node, the User Node and the Master Program? It seems to me that was the only paragraph that discussed how the 938 patent met that limitation. Am I correct? I think you're correct, Your Honor. Thank you. I'll take the rest of the time for both. Ms. Dury? Good morning, and may it please the Court. Daryl and Dury from Dury Congre appearing on behalf of Yelp. Let me begin by addressing the question that Your Honor asked with respect to Master Node. On page A6 in the joint appendix of the Court's opinion, the Court addresses EIT's contention that the Master Node must be a stand-alone physical structure, as distinct from software in the proxy server, and notes that the Court had previously rejected that contention in its claim construction order. This, I think, does boil down to a question of claim construction as to whether the Master Node must be embodied in separate hardware. I would suggest the specification does not provide any support for that limitation. The specification states only that the Master Node is preferably a server, but imposes no requirement that it be a server, let alone a separate server, which indeed makes sense. The two arguments are that it's listed as separate from everything else on the figure and schematic, so why wouldn't it be a separate server? Well, there is a block diagram that shows it as being a separate box, but I do not think one can infer from that block diagram that even in the preferred embodiment, it would have to be implemented in separate hardware. And even if one could draw that inference from the diagram of the preferred embodiment, there is nothing to suggest that the claims would be limited to a Master Node that is embodied in a separate piece of hardware, as opposed to the District Court's very common-sense construction that a node typically does mean a point of connection. And as the Court previously suggested, there's nothing in this Court's jurisprudence that would preclude one hardware structure from satisfying both of those claim elements. But what about the language in the claim that talks about this is meaningful receiving through the Master Node a user ID and respected network address, et cetera? The fact that it's through the Master Node suggests that they're two separate things, correct? I would suggest, Your Honor, that it suggests that there are two separate functions, but it does not suggest that they have to be implemented on two separate hardware boxes. In the context of the 938 proxy server, the information is received through the node, through the point of connection into the network, and then transferred to other functions within the proxy server that operate on that information. I see. So you're saying that the node could be within the proxy server. Correct. It is software that is implemented within the proxy server that functions as the Master Node and is the connection into the network. I see. Thank you. There were four arguments made by... Where does the prior art disclose that you're going to identify the user profile with a particular internet address? In the 938 patent, that is disclosed by the use of one-time return addresses. The 938 patent is concerned with preserving the anonymity of the user. Yes, in other words, exactly. The 938 is trying to avoid being traced back to any address. Doesn't that suggest that it isn't disclosing this? I would suggest that it is not trying to avoid being traced back to an address. It is trying to avoid identifying the user by some name or other descriptive information so that the entities that are providing the target information will not know to whom it is being sent. In the 938 patent, that is done by identifying the user by a pseudonym and linking that pseudonym to a set of return addresses that allow the target information to be sent back by the user. Is that linking the profile information to the address, which is a claimed term, so you've got to show that is in the prior art? There is a clear statement that the one-time return addresses are stored together with the pseudonym and it makes sense that they would have to be in order for them to be associated so that the information could be sent back. EIT did not raise any factual dispute in the district court as to whether those one-time return addresses would necessarily have to include the network address to which the information was going to be sent in order for it to be capable of reaching that destination. There was no factual dispute in the evidence presented in the district court on that point. In addition to the master node and the user profile information corresponding to a network address, there were two other arguments made by EIT in this appeal with respect to Claim 41. That is storing a user report from the user node. There is a clear disclosure in the 938 patent at column 17. But that talks about updating, doesn't it? It talks about storing feedback in a database. It explicitly references... Can you show us? Where is that? It is column 17, line 23 to 26. 17, 23 to 26. It says such feedback is stored long-term in summarized form as part of a database of user feedback information. Yes, I even have it highlighted. Your Honor, that leaves us with only one other argument that has been presented with respect to Claim 41. That is the court's construction of the term reference. EIT had asked the court to read in two narrowing limitations. One, that a reference be dynamically generated. EIT pointed its support for that to Figure 5. But while Figure 5B shows that the claim system is capable of generating dynamically generated references, Figure 5A makes clear that it is not limited to that. Because references to target information are supplied from the time that the user first logs into the system. And second, EIT asked the court to limit the construction of reference to a pointer. Although I would suggest it was not clear in the proceedings below what significance EIT attributed to that definition of a pointer, it is at least now clear, I think, in the appellate briefing, that they are trying to suggest that a pointer would be something that could not be displayed to a user. But there is no suggestion in the specification that a reference should be limited to something that cannot be displayed. The specification is entirely silent on that point. And indeed in EIT's infringement contention, they pointed to HTML links on the Yelp website on which a user can click in order to be directed to additional information. And that is exactly what is happening in the 938 patent where a list of information is displayed to the user and the user can then select one of the items on the list and click it in order to obtain the target information. Returning to something we have discussed before, does the prior art really have a master node or are you just saying it has the equivalent of a master node? And if it is just an equivalent, is that anticipation? I am saying that it has a master node. The court's construction of a master node is a point of connection into a network. And the 938 patent does disclose a point of connection into the network, a network function that serves as that point of connection. So I would say it falls squarely within the court's claim construction of what a master node is. Unless we buy the argument that that has to be a separate structural entity. Correct. And then I would say even if one accepts that in the 837 patent, it is described as being a separate structural entity, although I don't think there is any such requirement, even then I think we would move to this court's jurisprudence that it is possible to satisfy two structural elements with a single structure so long as it has each of those structural components and that the proxy server of the 938 patent would have each of them. Because it has a structure within the proxy server that interacts with the network that is the point of connection to the network as well as various structures that perform the other functions. That leaves us, I think, with respect to anticipation only with the one additional argument that EIT makes regarding Claim 40, which is the means for accessing. EIT here argues that the corresponding structure is the SQL server. But EIT has not challenged and I would contend has waived any argument challenging the district court's conclusion that a SQL server is equivalent to the database that is disclosed in the 938 patent. A conclusion that I think would be very difficult to challenge in light of the 837's recitation that a SQL server can be implemented using any other type of database technology and that would nonetheless fall within the scope of the contemplated invention. The only final point I would make, unless the court has any further questions, has to do with the alternative basis for affirmance, which is the indefiniteness of the 112.6 limitation. And I would suggest here that even if the court was correct in its claim construction that master program is the appropriate corresponding structure, the claim could still be indefinite under 112.6 because master program itself does not have sufficient structural limitations under aristocrats and its progeny. It is essentially equivalent to nothing more than a general purpose computer. EIT's response to this is to point to certain other structural... Am I correct that district court did not reach that argument? That is correct. Then we don't have anything to review, do we? Your Honor, I believe that you do because the evidence that would be required to reach a judgment on that is entirely contained within the record and judgment may be affirmed on any alternative ground. That is true in Federal Circuit jurisprudence in Foxspring v. Rapmaster, 560 F-1317. And yet we say repeatedly that we review decisions made below. This decision hasn't been made, has it? If we're going to reach this, wouldn't we be wiser to send this back and say take a look at indefiniteness? I would suggest, Your Honor, not on an issue such as indefiniteness, which is a pure question of law. The court has in some circumstances on prior... A pure question of law. You're going to tell me that discerning very fine technical points of what this technology is and how it's reflected in language as understood by a person of skill in the art is a pure question of law. The question here would be whether a master program is sufficiently structural to withstand scrutiny under 112-6. There is no complicated evidentiary record on that that the court would need to review because EIT put in no evidence with respect to the structural needs and bounds of master program other than pointing to the other defined subcomponents of it, the web server and the SQL server, and tried to argue that those provided structure. The problem is those structures were not linked to the claim functions. It's as though you were to say the corresponding structure for a means for propulsion is a car and then try to defend the definiteness on the grounds that the car is described as having windshield wiper. In the absence of any linkage between the SQL server and the web server with the claim function, there is no structure associated with the claim functions. And I would suggest under both Federal Circuit law and under Grand Financiera v. Norberg 492 U.S. 33, which is a clear instruction from the Supreme Court, this court certainly has the ability to affirm on that alternative ground should it choose to do so. Thank you. Thank you. Ms. Lipsky, you have three and a half minutes. Thank you. Your Honors, I would like to point out that even if you did decide to delve into indefiniteness, unlike the district court, that still would only be relevant to Claim 40, and so Claim 41 would still be at issue. With respect to the point that counsel made regarding no evidence by EIT, first of all, the evidence is within the patent itself. A master program is. I mean, it's very clearly described, even down through the brand name of the SQL server. A Sybase SQL server is part of the structure of the master program. And in addition, there was an expert declaration submitted to the district court, which the district court did not address, that talked about not only the missing elements that are not in the 938 patent. What is the most important missing element in your mind? The master node. The master node. But we've discussed, how do you get around the argument that even if we construe the patent to make that a separate structure, you have the same master node connection function in the prior art? Because the master node is not a function. If you look at the claim language itself, it's not just that the means for receiving through the master node. In the preamble, it specifically states a master program module coupled to a master node and a master database. It's clear that the master program interacts with a separate master node and a master database. And something, if the proxy server is equivalent to the master program, then it can't be equivalent to the master node and the master database that the master program itself is connected to. As I mentioned, our expert declaration both addresses the anticipation argument with respect to 938, as well as the indefiniteness argument that has been brought up here. Unless there are any further questions? Thank you, Ms. Lipsky. I think that concludes our morning. Thank you.